# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| KEVIN HILL,<br><br>Plaintiff,<br><br>v.<br><br>CAPTAIN LYNN WALK et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-CV-218 TS<br><br>District Judge Ted Stewart |

Plaintiff, Kevin Hill, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 U.S.C.A. § 1915 (West 2010). On March 1, 2010, Defendants filed a *Martinez* Report (Doc. no 48) addressing Plaintiff's allegations. Several days later, Defendants filed a motion for summary judgment based on the evidence presented in their *Martinez* Report. On March 30, 2010, the Court appointed pro bono counsel to assist Plaintiff in gathering evidence and preparing a proper summary judgment response. Defendants' Motion for Summary Judgment is now fully briefed and properly before the court.

## ANALYSIS

### I. Introduction

Plaintiff is an African-American inmate in the custody of the Utah Department of Corrections. Plaintiff alleges that over a period of several weeks in mid-2008, while housed at the Central Utah Correctional Facility (CUCF), Defendants Lynn Walk and Cristy Fox subjected

Plaintiff to cruel and unusual punishment by allowing him to be attacked by other inmates. Specifically, Plaintiff alleges that Defendants routinely left the "cuff port" on his cell door open allowing other inmates to throw urine and feces at him, which led to an infection in Plaintiff's arm. Plaintiff alleges that he repeatedly told Defendants about these incidents, but despite his pleas for help, Defendants refused to intervene, saying that they had not witnessed any attacks, that there was no proof Plaintiff was in any danger, and that Plaintiff was merely trying to manipulate his housing assignment. Plaintiff also alleges that on one occasion Defendants let a known white supremacist into the common area while Plaintiff was returning from the shower, allowing the inmate to assault Plaintiff. Plaintiff states that he suffered head pain and a slight concussion during this attack which made him fear for his safety. Finally, Plaintiff states that on several occasions Defendants verbally abused Plaintiff and directed racial slurs at him. Plaintiff's Complaint asserts one claim of cruel and unusual punishment under the Eighth Amendment against Defendants in their individual capacities. The Complaint seeks compensatory and punitive damages, attorneys fees and costs.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules

of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998). Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id*. A fact in dispute is "material" only if it might affect the outcome of the suit under governing law. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). Mere allegations and references to the pleadings will not suffice, instead, the specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Moreover, "the nonmovant's affidavits must be based upon personal

knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir .1991). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### III. Material Facts[1]

The following facts are uncontroverted for summary judgment purposes:

1. Plaintiff, Kevin Hill, is a Utah state prisoner of African American race. (Complaint ¶ 6).

2. During the time period referenced in the Complaint, Plaintiff was incarcerated at the Central Utah Correctional Facility (CUCF) in Gunnison, Utah. (Declaration of Capt. Lynn Walk, ¶ 7)

3. Defendant, Capt. Lynn Walk, is employed by the Utah Department of Corrections (UDC) at CUCF, and during the time period referenced in the Complaint, was responsible for supervising the Special Management Unit (SMU) and Cedar Unit. (Walk Decl. ¶¶ 3-4)

4. Defendant, Officer Cristy Fox, is employed by UDC as a corrections officer at CUCF. (Declaration of Officer Cristy Fox, ¶ 2)

5. On July 11, 2008, Plaintiff filed an Inmate Grievance stating that while exiting the

---

[1] The material facts presented here are drawn from the Complaint, Defendants' *Martinez* Report, and the parties' summary judgment briefs and exhibits. Except as noted, these facts are not in dispute.

shower that afternoon, he was "confronted" by a known white supremacist inmate who had been let into the common area by someone in the control room. Plaintiff's grievance stated that he "ignored the inmate and entered [his] cell" where he stayed "for a period of time" before going to the control booth to seek assistance. When the control room officers saw Plaintiff outside his cell with the other inmate they "realized their serious error" and "began clicking the inmates door." After making "racial comments at [Plaintiff]" the other inmate "reluctantly entered and closed his cell door." (Pl.'s Opp'n Memo, Ex. D.)

6. Plaintiff asserts that during this incident the unnamed white supremacist inmate threw a book at him which struck Plaintiff in the head causing a headache and a slight concussion. (Hill Decl. at 4-5.)

7. It is CUCF policy to only allow the occupant(s) of one cell in the SMU at a time into the common area or showers. (Fox Decl. ¶¶ 14-16; Walk Decl. ¶¶ 39-44.)

8. Plaintiff's grievance regarding the white supremacist incident did not state that he was physically attacked or suffered any injuries. However, it did state that his safety and security were threatened, that the officers on duty were racially biased against him, and that the officers were aware of a previous racial incident involving Plaintiff and ongoing racial tensions on the cell block. Plaintiff's grievance requested an immediate transfer back to the Utah State Prison in Draper, Utah. (Pl.'s Opp'n Memo, Ex. D.)

9. Plaintiff asserts that Defendants have each used racial slurs against Plaintiff,

including calling him a "nigger." (Hill Decl. at 1-3; Penrod Decl. ¶ 4; Bennett Decl. ¶ 5)

10. On July 16, 2008, Plaintiff received a Level I grievance response from Captain Walk denying that any racial bias or conflict existed between Plaintiff and officers and asserting that Plaintiff's grievance was merely retaliation for Walk's denial of Plaintiff's request for different housing. Walk also stated that while discussing Plaintiff's family problems, which involved racial conflicts, Plaintiff brought the term "nigger" into the conversation and Walk also used the term but never directed it at Plaintiff. (Pl.'s Opp'n Memo, Ex. C at 6.)

11. Plaintiff appealed the denial of his grievances alleging racist treatment by Defendants to Level II and Level III but was denied relief at all levels. The appeals officers each concluded that Plaintiff's allegations lacked credibility. (Pl.'s Opp'n Memo, Ex. C at 6.)

12. Following the denial of Plaintiff's grievance appeals, disciplinary proceedings were commenced against Plaintiff for abuse of the grievance process. Following a hearing, Plaintiff was found not guilty of the charges of "Misuse of Administrative Review" and "Manipulation of Housing Assignment." (Pl.'s Opp'n Memo, Ex. F-G.)

13. Over a period of several weeks prior to the shower incident prisoners threw feces and urine into Plaintiff's cell through the open cuff port on his cell door. (Hill Decl. at 1-3; Penrod Decl. ¶ 6; Bennett Decl. ¶ 8; Declaration of Tevita J. Haunga,

¶ 4.)

14. Plaintiff suffered an infection in his arm which he asserts was caused by being hit with feces and urine thrown by other inmates. (Hill Decl. at 1-3.)

15. Cuff ports on inmates' cells are opened during meal times (approximately 6:00 a.m., 11:00 a.m., and 4:00 p.m.). (Walk Supp. Decl. ¶ 6; Fox Supp. Decl. ¶ 9.)

16. Cuff ports are usually open for approximately one hour. (Walk Supp. Decl. ¶ 10; Fox Supp. Decl. ¶ 12.)

17. Three times per day there is a standup count of inmates. These are done at 11:00 a.m., 4:00 p.m. and 8:30 p.m. when the cuff ports are open. (Walk Supp. Decl. ¶¶ 7-8; Fox Supp. Decl. ¶¶ 10-11.)

18. The only inmates with access to Plaintiff when cuff ports are open would be the two inmates who provide tray service. (Walk Supp. Decl. ¶ 11; Fox Supp. Decl. ¶ 13.)

19. The control room monitors the two inmates as they provide tray service during meal time for the other inmates. (Walk Supp. Decl. ¶ 12; Fox Supp. Decl. ¶ 14.)

20. Plaintiff verbally complained to Defendants that he was being assaulted by other inmates because his cuff port was being left open. (Hill Decl. at 1-3.)

21. No grievances or incident reports were ever prompted or filed by Plaintiff regarding the throwing of feces and/or urine at him in his cell. (Walk Supp. Decl. ¶ 14; Fox Supp. Decl. ¶ 16.)

22. All cells at CUCF are equipped with an emergency call button and intercom

which allows inmates to contact the control room. (Walk Supp. Decl. ¶ 15; Fox Suppl. Decl. ¶ 17.)

23. At no time did Plaintiff use the emergency call button to report he or his cell were being assaulted with feces or urine by another inmate. (Walk Supp. Decl. ¶ 16; Fox Supp. Decl. ¶ 18.)

24. At no time did inmates Bennett, Penrod or Haunga report to Defendants or the control room that Plaintiff was being assaulted with feces or urine. (Walk Supp. Decl. ¶ 18, Fox Supp. Decl. ¶ 19.)

25. Because of the way that the cells are positioned within the section, inmates Bennett, Penrod and Haunga could not have witnessed any type of assault on Plaintiff in this cell. (Fox Supp. Decl. ¶¶ 21- 26.)

26. Plaintiff was never seen by medical staff at CUCF for an infection in his arm. (Walk Supp. Decl. ¶ 19.)

27. Plaintiff was not seen by medical staff for a concussion during June or July, 2008. (Walk Supp. Decl. ¶ 22.)

### IV. Legal Standard for Failure to Protect Claims

To state a claim under the Eighth Amendment for failure to provide adequate protection from other inmates, a plaintiff must satisfy two elements. First, the plaintiff must allege facts showing "that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1977 (1994). Second, the plaintiff must show that the prison official had "a 'sufficiently culpable state of mind' . . . one of 'deliberate

indifference to inmate health or safety.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2326 (1991)). A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. The official's state of mind must be measured by a subjective standard, meaning he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Id*. at 842. Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*.

The deliberate indifference requirement is not satisfied by either negligence or constructive notice. *Id.* at 835, 841. This is because an official's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id*. at 838.

### V. Sufficiency of Evidence

### A. Substantial Risk of Serious Harm

Plaintiff alleges two separate ways in which he was subjected to a substantial risk of serious harm: First, by having his cuff port routinely left open, which allowed other inmates to repeatedly throw urine and feces at him. And second, by having a known white supremacist released into the common area while Plaintiff was showering.

Defendants contend that the evidence here does not support either of Plaintiff's assertions

9

that he was placed in serious physical jeopardy. Regarding the throwing of feces and urine into his cell, Defendants assert that the evidence shows that the cuff ports are only left open during mealtimes and standup inmate counts and that the only inmates in the common area during those times are the two inmates who distribute meals under constant supervision from the control room. Defendants contend that Plaintiff's allegations are not credible because he never formally reported the attacks, he has never identified his attackers, no incident report was ever filed regarding the attacks, any such attack would have been observed by the control room, and Plaintiff never sought medical treatment for an infection. Regarding the alleged attack by a white supremacist, Defendants assert that Plaintiff never reported that he was actually physically attacked (Plaintiff's grievance regarding the incident only stated that he was "confronted" and called names), Plaintiff has never identified the inmate who attacked him, and there is no record that Plaintiff ever reported or sought medical treatment for any injuries sustained in the attack. The court finds these factors sufficient to shift to Plaintiff the burden of presenting credible evidence supporting his claims.

Plaintiff's only evidence to support his allegations that he was placed at substantial risk of serious harm are his own sworn Declaration and Complaint and the declarations of several other inmates who were present on the cell block during the time in question. Because Plaintiff's Declaration and Complaint are filled with self-serving conclusions unsupported by specific facts the court finds Plaintiff's own statements uncompelling. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("conclusory and self-serving affidavits are not sufficient" to defeat summary judgment).

Despite significant flaws, the declarations of inmates Penrod and Bennett do lend some evidentiary support to Plaintiff's assertions that he faced a substantial risk of harm.[2] Penrod states that he "used to be an Aryan Skinhead gang member" when he was housed with Plaintiff at CUCF and "admit[s] to assaulting (shitbombing) [Plaintiff] w[ith] feces and urine on a number of different occasions." (Penrod Decl. ¶ 5.) Penrod further states that he "witness[ed] [Plaintiff] get assaulted w[ith] urine and feces (shitbombing) by other Aryan Skinhead gang members on a number of occasions." (Penrod Decl. ¶ 6.) Regarding the shower incident, Bennett's declaration states that he "witnessed and heard . . . officers . . . bring a white supremacist gang member back into [Plaintiff's] section while [Plaintiff] was out on his rec[reation] taking a shower." (Bennett Decl. ¶ 4.) Bennett further states that he "witness[ed] the white supremacist inmate throwing books at [Plaintiff] and also calling him [racial slurs]." (Bennett Decl. ¶ 4.)

Although the Penrod and Bennett declarations are replete with hearsay and observations based on rumor and innuendo rather than personal information, the statements cited above are sufficient to create a genuine issue of material fact as to whether Plaintiff faced a substantial risk of serious harm due to attacks from other inmates.

### B. Deliberate Indifference

Having concluded that Plaintiff's evidence is sufficient to show a genuine issue of material fact as to whether that he was housed under conditions posing a substantial risk of serious harm, the court now turns to the second prong of the Eighth Amendment inquiry, whether

---

[2] The declarations of inmates Leishman and Haunga are entirely conclusory and do not lend any support to Plaintiff's claims.

Defendants were deliberately indifferent to Plaintiff's health or safety. Plaintiff attempts to show that Defendants were deliberately indifferent by presenting evidence that: (1) Defendants were racially biased against Plaintiff; (2) Defendants intentionally left Plaintiff's cuff port open so that other inmates could throw urine and feces at him; and (3) Defendants intentionally brought Plaintiff into direct contact with a white supremacist inmate, allowing Plaintiff to be assaulted. The court addresses each of these arguments in turn.

**i. Racial Bias**

Plaintiff's evidence of racial bias consists entirely of alleged statements made by Defendants and other officers toward Plaintiff. Plaintiff's only evidence of these statements is his own declaration and those of inmates Penrod and Bennett.[3] As previously mentioned, however, Plaintiff's own self-serving statements are not sufficient to survive summary judgment, while Penrod and Bennett's statements on this point are largely hearsay. More importantly, evidence of racial bias by Defendants is not sufficient to show that Defendants were deliberately indifferent to Plaintiff's safety. While such evidence may lend support to Plaintiff's claims, "verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). Thus, the court finds that Plaintiff's evidence of racial bias is not sufficient to show that Defendants were deliberately

---

[3] Plaintiff's opposition memo attempts to use Defendant Walk's grievance response to rebut Walk's averment that he never "verbally abused or used racial slurs against the Plaintiff." (Pl.'s Opp'n Memo at 3.) However, when read in context, Walk's grievance response only admits to using "a racial term (nigger)" but not to not directing the term at Plaintiff. (Pl.'s Opp'n Memo, Ex. C.)

indifferent to Plaintiff's health or safety.

### ii. Urine and Feces Attacks

The court now turns to Plaintiff's evidence regarding the throwing of urine and feces into his cell. Plaintiff asserts that Defendants showed deliberate indifference by facilitating and failing to take action to stop these attacks. However, Plaintiff has not even shown that Defendants knew these attacks were occurring. Although Plaintiff states that he told Defendants about these attacks, he provides no specific details such as when or how he told them, or how they responded to the news. The lack of such details is all the more disturbing given the absence of any corroborating evidence showing that Defendants knew about the attacks. Plaintiff has not shown that he ever formally reported the attacks, prompted an incident report about them, or sought medical attention for injuries caused by the attacks.

The declarations of Penrod and Bennett also do not support the conclusion that Defendants were aware of any urine or feces attacks on Plaintiff. Despite Penrod's shocking admission that he personally participated in these attacks and also witnessed other inmates carry them out, Penrod does not state that the attacks occurred in the presence of Defendants or other officers, or that he personally reported them to anyone. Inmate Bennett's only reference to such attacks is his statement that during the shower incident involving the white supremacist Plaintiff "was hit with a 'shitbomb' under and on his door." (Bennett Decl. ¶ 8.) This statement suggests that Bennett was unaware of any attacks prior to shower incident. It also conflicts with the statements of others, including Plaintiff, who never mention throwing of urine and feces during the shower incident. Thus, neither of these inmates' statements offer any support for Plaintiff's

13

assertion that Defendants knew about the urine and feces attacks but failed to take appropriate action.

Finally, Plaintiff has not shown that his cuff port was intentionally left open at unusual times in order to facilitate attacks upon him. Defendants have presented credible evidence showing that cuff ports are only left open during specific times of day in order to facilitate meal distribution and inmate counts, and that the only inmates in the common area during these times are those distributing meals under supervision from the control booth. Plaintiff has not disputed this evidence, nor has he ever stated that the inmates who attacked him were distributing meals. Thus, Plaintiff has provided no plausible explanation for how these attacks could have routinely occurred while his cuff port was open. Moreover, even if Plaintiff could prove the attacks, merely showing that Defendants opened Plaintiff's cuff port during regularly scheduled times does not support the conclusion that Defendants knowingly facilitated attacks on Plaintiff.

Given all of these shortcomings, the court finds that Plaintiff has not met his burden of presenting sufficient evidence from which a fact-finder could reasonably conclude that Defendants knew Plaintiff was being attacked with urine and feces but were deliberately indifferent to Plaintiff's health or safety.

### iii. Shower Incident

Plaintiff's evidence regarding the alleged attack by a white supremacist is also insufficient to show deliberate indifference by Defendants. Plaintiff not only fails to show that he suffered a significant injury during this incident, there is also no evidence that Defendants were directly involved, or that they were deliberately indifferent to the risk of an attack upon

14

Plaintiff.

### a. Physical Injury

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e) (West 2011); *see also, Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). Plaintiff has not presented sufficient evidence to show that he suffered any significant physical injury during the shower incident.

Plaintiff's Complaint does not allege any physical injury sustained in the shower incident, instead, it alleges only that Plaintiff "feared for his safety when confronted by the other inmate." (Compl. at 3.) According to Plaintiff's grievance statement, after Plaintiff was "confronted" and called names by the inmate he "ignored the inmate and entered [his] cell" where he stayed "for a period of time." (Pl.'s Opp'n Memo, Ex. D.) Plaintiff states that when he later exited his cell to speak with other inmates or someone in the control booth, some of the Aryan Skinhead inmates in the unit encouraged the white inmate to attack Plaintiff. According to inmates Penrod and Bennett, the would-be attacker shouted racial epithets and threw books at Plaintiff, however, neither inmate states that they saw any books hit Plaintiff. Plaintiff's grievance states that once the control room "realized their serious error" they took immediate action to get the white inmate into his cell and away from Plaintiff. (Pl.'s Opp'n Memo, Ex. D.) Plaintiff states that when the female voice from the control room told the inmate to "quit playin' around" and "rack in!" the inmate reluctantly complied.

In response to Defendants' summary judgment motion, Plaintiff asserted for the first time that during this incident he was struck in the head with books and shoes thrown by his attacker, causing a headache and a slight concussion. (Hill Decl. at 4-5.) This late-coming, self-serving statement, however, is not corroborated by any other evidence. As Defendants point out, there is no record that Plaintiff requested or received any medical attention as a result of this incident. Moreover, Plaintiff's statement that the control room officer told the inmate to "quit playin' around" undermines Plaintiff's assertion that he was brutally attacked or suffered significant injuries during the incident.

Thus, the court finds that Plaintiff has not presented sufficient evidence to show that he suffered any significant physical injury during the shower incident, as required under 42 U.S.C. § 1997e(e).

**b. Personal Participation**

It is well-settled that personal participation is an essential element of a § 1983 action. *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996). Thus, to support a claim against an individual under Section 1983, a plaintiff must establish specific facts showing an affirmative link between each named defendant and the violation of the plaintiff's civil rights. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1157 (10th Cir. 2001). To make out a claim against a supervisor under Section 1983, a plaintiff must establish "that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001). "The requisite causal connection is satisfied

if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990).

Here, Plaintiff has not shown that either of the named Defendants were even present when the shower incident occurred, much less that they were directly responsible. Although Plaintiff reports hearing a female voice from the control room, he does not affirmatively state that it was the voice of Defendant Fox. Moreover, there is no evidence that either Defendant was even on duty at the time. Nor has Plaintiff established that Defendant Walk had any direct or supervisory involvement in the incident. There is no evidence that the accidental admission of the white supremacist inmate into the unit with Plaintiff resulted from Captain Walk's direct involvement, his exercise of control or direction, or a failure to supervise. In fact, the evidence shows that it was contrary to established policies and procedures and was a simple mistake or oversight which was quickly corrected. Thus, Plaintiff has not shown that either Defendant was personally involved in the shower incident.

### c. Defendants' State of Mind

Even assuming that Plaintiff could satisfy the physical injury and personal participation requirements, Plaintiff has not shown that Defendants or any other officers were deliberately indifferent to the risk that Plaintiff would be attacked by the white supremacist inmate. Although the evidence shows that CUCF policies prohibited inmates housed in different cells in the SMU from being in the common area at the same time, the record here supports the conclusion that Plaintiff's run-in with the white inmate was merely an accident. Plaintiff has not offered any

17

evidence besides his own conclusory statements to show that Defendants knowingly or intentionally exposed Plaintiff to an attack. Moreover, Plaintiff admits that when the control room officer realized that Plaintiff was exposed to the white supremacist inmate, she promptly ordered the inmate to "rack in" to his cell. If officers truly intended for Plaintiff to be attacked, they likely would not have intervened before Plaintiff even came into direct physical contact with his attacker. Given the absence of any corroborating evidence, Plaintiff's statements regarding the officers' state of mind are not sufficient to create a genuine issue of material fact for trial. Plaintiff's conclusory allegations do not become sufficient simply because they are put in affidavit form. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir.2006) (at summary judgment, " 'statements of mere belief' in an affidavit must be disregarded").

### d. **Conclusion**

Based on Plaintiff's failure to show that he suffered any significant physical injury, or that Defendants were personally involved or had the requisite state of mind, the court concludes that Plaintiff's evidence regarding the shower incident is insufficient to show a genuine issue of material fact for trial. Because the evidence here does not support a finding that Defendants violated Plaintiff's rights under the Eighth Amendment, the court need not address Defendants' assertion of qualified immunity.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Dkt. No. 44) is **GRANTED**; and,

(2) this case is **CLOSED**.

DATED this 31st day of March, 2011.

BY THE COURT:

_____
TED STEWART, Chief Judge
United States District Court